IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Case No. 3:11-CR-58 (CAR) |
| v. | : |
| | : Filed at 11:01 AM 2-25-2013 |
| LINDA WINGO | : |
| | : U.S. DISTRICT COURT MIDDLE DISTRICT OF GEORGIA |

**BINDING PLEA AGREEMENT PURSUANT TO
FEDERAL RULE OF CRIMINAL PROCEDURE 11(c)(1)(C)**

It is agreed by the United States of America, by and through its undersigned attorneys, and LINDA WINGO, hereinafter referred to as "Defendant," and Defendant's undersigned attorney, as follows:

**(1)**

Defendant acknowledges that she has reviewed and discussed the Information against her in this matter with Defendant's attorney and that Defendant's attorney has explained to Defendant his understanding of the government's evidence.

**(2)**

Defendant understands that she is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by jury. Defendant understands that at a jury trial, Defendant would enjoy a presumption of

1

innocence, and that the government would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant further understands that she would be entitled to the services of a lawyer at all stages of such a trial. Defendant understands that she would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in Defendant's own behalf. Defendant understands that she would have the right to testify in Defendant's own behalf, but that Defendant could not be compelled to do so. Defendant has discussed these rights with her attorney. Defendant is satisfied with the services of her lawyer. Defendant knowingly and voluntarily waives her right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on *Booker, Apprendi v. New Jersey*, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of



right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of her rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as follows:

**(A)** That Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Information which charges Defendant with Misprision of a Felony, in violation of Title 18, United States Code, Section 4.

**(B)** That Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant to a maximum sentence of three (3) years imprisonment, a maximum fine of $250,000.00, or both, and a term of supervised release of one (1) year. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00.

However, this plea agreement is made pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure. Defendant and the United States Attorney agree that a term of probation, as well as a fine, and a term of supervised release (the amount of the fine and the term of supervised release to be determined by the Court), is the appropriate sentence in this case. The parties jointly request that such a sentence be

3



imposed by the Court.

Defendant understands that if the Court accepts this plea agreement, this joint request will be binding upon the Court. Defendant further understands that if the Court rejects this plea agreement, the Court must do so on the record and in open court. The Court must advise Defendant of the following: (i) inform the parties that the Court rejects the plea agreement; (ii) advise Defendant personally that the Court is not required to follow the plea agreement and give her the opportunity to withdraw the plea; and (iii) advise Defendant personally that if the plea is not withdrawn, the Court may dispose of the case less favorably toward Defendant than the plea agreement contemplated. The government further agrees that should this plea be withdrawn based on the Court notifying the parties that it will not accept the terms of this agreement, the government will not make any use of the statements made by Defendant during the plea colloquy or as stipulated in this agreement in any subsequent trial which might be necessary.

(C) Defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that Defendant may have received from Defendant's counsel, the government, or the Probation Office. Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw her plea because Defendant has received an estimated guideline range from the

4

government, Defendant's counsel, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.

**(D)** Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a Pre-Sentence Investigative Report has been completed. Defendant understands and has discussed with her attorney that the Defendant will have the opportunity to review the Pre-Sentence Investigative Report and challenge any facts reported therein. Defendant understands and has discussed with Defendant's attorney that any objections or challenges by Defendant or Defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

**(E)** Defendant understands and has discussed with Defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range. Defendant understands that under Federal Rule of Criminal Procedure 11(c)(1)(C) the government and Defendant have agreed that a sentence of probation is the appropriate disposition of this case and that this

5



agreement will bind the Court, in the event that the Court accepts this plea agreement. Defendant understands and agrees that the agreement to this probated sentence is contingent upon the entry of a guilty plea by Defendants Joe and Andy Wingo, however Defendant pleads guilty and enters into this plea agreement voluntarily and because she is guilty.

**(F)** Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

**(G)** Defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, Defendant, by this agreement, forever waives any right to an appeal or any other Court review of Defendant's sentence, and Defendant's waiver includes any collateral attack on the Court's sentence.

Defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's opportunity to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States Attorney notices an appeal of Defendant's sentence, then Defendant shall have the right to cross-appeal from the sentence.

(H) Defendant understands that the Government may have various items of biological evidence in its possession in connection with this case that could be subjected to DNA testing. Biological evidence for this purpose is defined as any sexual assault forensic examination kit and any other evidence that, in the course of the investigation and prosecution of this matter, has been detected and has been identified as semen, blood, saliva, hair, skin tissue, or some other type of biological material.

Defendant further understands that following conviction in this case, she could file a motion with the Court to require DNA testing of any such biological evidence pursuant to 18 U.S.C. § 3600 in an attempt to prove defendant's innocence. Defendant fully understands this right to have any and all of the biological evidence in this case tested for DNA, has discussed this right with Defendant's counsel, and knowingly and voluntarily waives the right to have such DNA testing performed on the biological evidence in this case. Defendant fully understands that because Defendant is waiving this right, the biological evidence in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

(I) Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding her involvement and the involvement of all others involved in the charges alleged in the present Indictment as well as any and

7

all criminal violations about which Defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. Defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. Defendant understands that this agreement does not require Defendant to implicate any particular individual or individuals or to "make a case," rather it requires the Defendant to be truthful and to testify truthfully whenever called upon.

### (4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

**(A)** That he will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought solely in this district against Defendant.

**(B)** That he further agrees, if Defendant cooperates truthfully and completely with the government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to Defendant's cooperation, to make the extent of the Defendant's cooperation known to the sentencing court. If Defendant is not completely truthful and candid in her cooperation with the

8

government, Defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a government motion at the time of sentencing recommending a downward departure from the advisory guideline range. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the imposition of sentence. In either case, Defendant understands that the determination as to whether Defendant has provided "substantial assistance" rests solely with the government. Any good faith efforts on the part of Defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure from the advisory guideline range or a Rule 35 motion. In addition, should Defendant fail to cooperate truthfully and completely with the government, or if Defendant engages in any additional criminal conduct, Defendant shall not be entitled to consideration pursuant to this paragraph.

9

(C) Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the government and is provided to the Government by Defendant in connection with Defendant's cooperation and as a result of Defendant's plea agreement to cooperate will not be used in determining the advisory guideline range. Further, the Government agrees not to bring additional charges against Defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in 18 U.S.C. § 924(e)(2)(B)(i), based on any information provided by Defendant in connection with Defendant's cooperation, which information was not known to the government prior to said cooperation. This does not restrict the Government's use of information previously known or independently obtained for such purposes.

(D) If Defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that Defendant receive a downward adjustment in the advisory guideline range. But the decision whether Defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that Defendant has not accepted responsibility,

10

including, but not limited to, denying her involvement, giving conflicting statements as to her involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

### (5)

Nothing herein limits the sentencing discretion of the Sentencing Court except as outlined in Paragraph 3(B) above.

### (6)

This agreement constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced her to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

### (7)

As an aid to this Court, the United States Attorney and Defendant, by and through Defendant's counsel, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section

11

6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the Defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

Angel Food Ministries (AFM), based in Monroe, Walton County, Georgia, within the Athens Division of the Middle District of Georgia, is a nonprofit tax exempt 501(c) organization founded in 1994 by Defendants Joe and Linda Wingo. AFM's primary stated mission is to provide food to the nation's needy at discounted prices. After receiving almost $7 million in low interest community facilities direct loan from the United States Department of Agriculture in 2005, AFM purchased a large distribution center in Monroe, Georgia, and used its considerable purchasing power and its tax-exempt status to gain volume discounts from various food vendors, such as Tyson, General Mills, and Perdue. In the process of growing from a local, to a regional, to a national nonprofit organization, AFM utilized churches from around the country, known as host sites, to coordinate the charitable efforts of thousands of volunteers to distribute food to the needy in over forty states, from New York, to California, to Texas.

Co-defendant Andrew ("Andy") Wingo, one of Joe and Linda Wingo's sons, held various titles at AFM, including Chief Operating Officer and head of food procurement. In his corporate capacities, Co-defendant Andy Wingo routinely negotiated with various food vendors who sold food to AFM which, in turn, AFM resold to the public. The fact that AFM was tax exempt, that it was able to purchase in large volume at a discount, and that its distribution network was in large part manned by volunteer labor, resulted in a large amount of annual revenue, an amount well in excess of expenses.

Co-defendant Andy Wingo devised various schemes to use complicit food vendors, such as an Alabama food brokerage business, J&W Foods, owned by William (Bill) Askins, and other vendors, to illegally and fraudulently divert monies from AFM for the private benefit of Co-defendant Andy Wingo and others, including Defendant Linda Wingo. Co-defendant Andy Wingo did so without the knowledge or the authorization of AFM. The Indictment describes in detail these various schemes, (Doc 1, pps. 16-49, Overt Acts 49 through 189), and some of the monies received by Co-defendant Andy Wingo from these schemes (*id.*, p.44, Overt Acts 216 through 238; pps. 47-48, Overt Acts 273 through 299).

As AFM grew, Defendant Linda Wingo was aware that AFM was generating more money than was needed to meet its overhead. She was also aware that her

13

son, Co-defendant Andy Wingo, was obtaining money from specific vendors outside of the AFM corporate structure and that this money was in some manner being fraudulently charged back to AFM.

Much of the monies J&W Foods paid to Co-defendant Andy Wingo was transferred to one of Co-defendant Andy Wingo's corporations, Good Hope Food Company. J&W Foods would either send checks or wire money into the Good Hope Food Company's account and then Co-defendant Andy Wingo would transfer the criminally-derived funds out for various reasons and to various individuals, including Defendant Linda Wingo.

For example, beginning on or about June 18, 2005, and continuing through August 1, 2006, Defendant Linda Wingo received the following checks from Good Hope Food Company:

| Check Date | Check # | Payee | Amount |
|---|---|---|---|
| 06/18/05 | 1224 | Linda Wingo | $500.00 |
| 08/01/06 | 1282 | Linda Wingo | $15,000.00 |
| | | **TOTAL** | **$15,500.00** |

In addition, beginning on or about February 25, 2005, and continuing through December 14, 2006, Defendant Linda Wingo received over $110,000 directly from Bill Askins, of J&W Foods. This aggregate amount included a 2005 "Christmas Bonus" for $20,000 and a 2006 "Christmas Bonus for $15,000, though Linda Wingo

14

was never employed by Bill Askins or J&W Foods, Inc. At the direction of Co-defendant Andy Wingo, Askins issued checks directly to Linda Wingo. Then, after Linda Wingo deposited each check and after each check cleared Askins' bank account, Askins would then increase his price of goods sold to AFM to recover the amount of money sent to Linda Wingo. Askins issued the following checks to Defendant Linda Wingo at the direction of Co-defendant Andy Wingo:

| Date | Check # | Payee | Amount |
| --- | --- | --- | --- |
| 2/25/2005 | 1613 | Linda Wingo | $3,200 |
| 4/29/2005 | 1688 | Linda Wingo | $4,000 |
| 6/22/2005 | 1743 | Linda Wingo | $3,153 |
| 7/29/2005 | 1786 | Linda Wingo | $2,000 |
| 8/26/2005 | 1825 | Linda Wingo | $3,000 |
| 11/18/2005 | 1914 | Linda Wingo | $5,000 |
| 11/18/2005 | 1915 | Linda Wingo | $5,000 |
| 12/16/2005 | 1947 | Linda Wingo | $20,000 Christmas Bonus |
| 1/20/2006 | 1980 | Linda Wingo | $5,000 |
| 2/22/2006 | 2022 | Linda Wingo | $5,000 |
| 3/24/2006 | 2051 | Linda Wingo | $5,000 |
| 4/21/2006 | 2083 | Linda Wingo | $5,000 |
| 5/19/2006 | 2111 | Linda Wingo | $5,000 |
| 6/23/2006 | 2143 | Linda Wingo | $5,000 |
| 7/28/2006 | 2171 | Linda Wingo | $5,000 |
| 8/24/2006 | 2199 | Linda Wingo | $5,000 |
| 11/16/2006 | 2289 | Linda Wingo | $5,000 |
| 11/16/2006 | 2290 | Linda Wingo | $5,000 |
| 12/14/2006 | 2319 | Linda Wingo | $15,000 Christmas Bonus |
| | | **TOTAL** | **$110,353.00** |

Defendant Linda Wingo knew and, should have known, that these payments were fraudulent and that she was being paid sums of money to her personal benefit and to the detriment of AFM.

On or about February 10, 2009, when federal agents executed search warrants at the AFM premises, Defendant Linda Wingo concealed and did not make known the facts of these crimes. Defendant Linda Wingo now agrees and stipulates that the Government can prove beyond a reasonable doubt all of the facts, as alleged, in the Information.

16



(9)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with her attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

SO AGREED, this 25th day of February, 2013.

MICHAEL J. MOORE
UNITED STATES ATTORNEY

BY: /s/ Sharon T. Ratley
Sharon T. Ratley
Assistant United States Attorney
Georgia Bar No. 703150

BY: /s/ Danial E. Bennett
Danial E. Bennett
Assistant United States Attorney
Georgia Bar No. 052683

17

I, LINDA WINGO, have read this agreement and had this agreement read to me by my attorney, I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

```
_____
LINDA WINGO
DEFENDANT
```

I, EDWARD D. TOLLEY, attorney for Defendant LINDA WINGO, have explained the Information and the government's evidence received through discovery and my investigation of the charge to Defendant. I believe Defendant understands the charges against her and the evidence that would be presented against her at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

```
_____
EDWARD D. TOLLEY, ESQ.
ATTORNEY FOR DEFENDANT
```